UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KOSTNER FOOD BASKET, INC. | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. _____ <br> ) |
| UNITED STATES OF AMERICA, | ) <br> ) |
| Defendant. | ) <br> ) |

## COMPLAINT

Plaintiff Kostner Food Basket, Inc. ("Kostner Food Basket"), by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 U.S.C. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated February 1, 2024, of the United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), permanently disqualifying Kostner Food Basket, a retail food store in Chicago, from participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff Kostner Food Basket is a resident and citizen of the State of Illinois.

3. Kostner Food Basket is the owner of a formerly SNAP-authorized grocery store located at 24 South Kostner Avenue, Chicago, Illinois 60624.

4. Kostner Food Basket is a "retail food store," as such a term is defined in 7 C.F.R. § 271.2.

5. Defendant United States of America is the federal government.

6. USDA is an executive branch department of the federal government.

1

7. FNS is an agency of the USDA.

8. FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to nearly 41 million Americans and more than 1.4 million residents of Illinois. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Kostner Food Basket, the retail food store that is the subject of this action, is located in this judicial district. Venue is also proper because the United States of America is deemed a resident of this district and has consented to suit in this district.

13. Plaintiff Kostner Food Basket has exhausted any and all administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

14. Kostner Food Basket is a convenience store that serves a deeply impoverished community in Chicago.

15. At all times relevant hereto, Kostner Food Basket carried hundreds of different SNAP-eligible food items.

16. Prior to September 25, 2023, Kostner Food Basket was a retail food store authorized for more than 10 years by FNS to redeem SNAP benefits. Kostner Food Basket's FNS-issued SNAP authorization number was #0407349.

17. On January 24, 2023, FNS's Retailer Operations Division ("ROD") charged Kostner Food Basket with trafficking in violation of FNS's SNAP Regulations ("Charge Letter").

18. The Charge Letter set forth two (2) categories of trafficking violations that FNS contended Kostner Food Basket allegedly engaged in, in violation of FNS's SNAP regulations. These categories are:

- Multiple transactions were made from accounts of individual SNAP households within a set time period; and

- EBT transactions that are large based on the observed store characteristics and recorded food stock.

19. The Charge Letter was accompanied by two (2) attachments, each of which set forth incomplete and redacted information about those transactions which FNS contended, "reveal Electronic Benefit Transfer (EBT) transactions that establish clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm."

20. Trafficking is defined, *inter alia*, as the exchange of food stamps for cash, alcohol, tobacco, or other ineligible food products. 7 C.F.R. § 271.2.

21. The penalty for trafficking is <u>permanent</u> disqualification from SNAP. 7 C.F.R. § 278.6(e)(1).

22. In the attachments to the Charge Letter, FNS redacted the majority of each EBT card number for each beneficiary that redeemed EBT at Kostner Food Basket for each transaction listed on each attachment to the Charge Letter.

23. By redacting the EBT card numbers and by failing to provide (or make available from state agencies that issue EBT cards to SNAP beneficiaries) the entirety of those beneficiaries' EBT card numbers and other personally identifiable information, FNS prevented Kostner Food Basket (and prevents other retailers charged with trafficking and other program violations) from contacting those SNAP beneficiaries whose EBT cards were used at Kostner Food Basket .

24. On or about February 24, 2023, Kostner Food Basket submitted its response to FNS's Charge Letter. Kostner Food Basket's response denied that any trafficking in SNAP benefits took place at the Store.

25. Via letter, dated September 25, 2023, FNS issued its initial determination permanently disqualifying Kostner Food Basket from participation in SNAP as an authorized retailer ("Permanent Disqualification Determination").

26. In the Permanent Disqualification Determination, FNS concluded that the violations set forth in the Charge Letter took place.

27. On September 28, 2023, Kostner Food Basket timely requested an administrative review of the Permanent Disqualification Determination, pursuant to 7 C.F.R. § 279.1 *et seq*.

28. On October 30, 2023, Kostner Food Basket submitted its written response in support of its request for administrative review of the Permanent Disqualification Determination to FNS's Administrative Review Branch ("ARB").

29. Kostner Food Basket's response in support of its request for administrative review conclusively rebutted FNS's trafficking determination.

30. During administrative proceedings, FNS relied upon records, which were never produced to Plaintiff or its counsel, when deciding to permanently disqualify Kostner Food Basket from SNAP.

31. On February 2, 2024, Lorie Conneen, an FNS Administrative Review Officer ("ARO Conneen") sent a copy of the FAD via e-mail to counsel for Kostner Food Basket. A copy of the FAD is attached hereto as Exhibit A.

32. The FAD, using verbiage nearly identical to that used in other administrative review determinations, held that the Store's "provide substantial evidence that questionable transactions during the focus period have characteristics and display patterns that are not consistent with legitimate sales of eligible food to SNAP benefit customers at a store of this type, size and makeup. Rather, the characteristics are indicative of illegal trafficking in program benefits. The Appellant's contentions do not outweigh this evidence." *Id.*, at 27.

33. The FAD, using verbiage similar to that used in other administrative review determinations, further held that the "record has yielded no indication of error or discrepancy in the reported findings by the Retailer Operations Division that program benefits were accepted in exchange for cash or consideration other than eligible food. Therefore, based on a review of the evidence in this case, it is more likely true than not true that program violations did, in fact, occur as charged. Therefore, the decision to impose a permanent disqualification from participation in the SNAP against Kostner Food Basket is sustained." *Id.* at 28.

34. In the FAD, FNS rejected all of Kostner Food Basket's arguments, notwithstanding the evidence it submitted and the absence of a preponderance of contradictory evidence.

35. FNS's Permanent Disqualification Determination and FAD relied upon records and other information never provided to Kostner Food Basket or its counsel, including portions of its Case Analysis Document ("CAD").

36. Upon information and belief, FNS's CAD contains numerous incorrect factual determinations about Kostner Food Basket.

37. Upon information and belief, FNS's CAD was based largely upon a single, short visit conducted by an FNS contractor on September 1, 2022 ("Store Visit"). The Store Visit lasted under an hour.

38. FNS relied upon undisclosed analyses of other SNAP-authorized retail food stores in the vicinity and the shopping habits of SNAP beneficiaries that shopped at Kostner Food Basket and other SNAP-authorized stores.

39. FNS's Charge Letter was triggered based upon a cursory screening of EBT transactions through FNS's Anti-Fraud Locator Using EBT Retailer Transactions ("ALERT") system conducted by FNS's Case Screening Branch.

40. No USDA or FNS official or employee ever visited Kostner Food Basket in connection with the issuance of the Charge Letter.

41. No federal employee and no FNS official or employee ever visited Kostner Food Basket in connection with administrative review proceedings, including (but not limited to) the issuance of the FAD.

42. Neither John Dotson, the FNS Program Specialist who issued the Charge Letter, nor Anthony Pesini, the FNS Section Chief who signed the Charge Letter and Permanent Disqualification Determination, ever conducted a store visit at Kostner Food Basket.

43. At no time did Program Specialist Dotson or Section Chief Pesini ever speak with any owner or employee of Kostner Food Basket or Kostner Food Basket.

44. At no time did Program Specialist Dotson or Section Chief Pesini ever speak with any SNAP beneficiaries who shopped at Kostner Food Basket .

45. At no time did Program Specialist Dotson or Section Chief Pesini ever visit any SNAP-authorized stores used as comparison stores.

46. At no time did Program Specialist Dotson or Section Chief Pesini ever speak with any owners, managers, or employees of any SNAP-authorized stores used as comparison stores.

47. At no time did Program Specialist Dotson or Section Chief Pesini conduct an analysis of eligible food items carried by or prices charged by any SNAP-authorized stores used as comparison stores.

48. At no time did ARO Conneen ever conduct a store visit at Kostner Food Basket.

49. At no time did ARO Conneen ever speak with any owner or employee of Kostner Food Basket.

50. At no time did ARO Conneen ever speak with any SNAP beneficiaries who shopped at Kostner Food Basket.

51. At no time did ARO Conneen ever visit any SNAP-authorized stores used as comparison stores.

52. At no time did ARO Conneen ever speak with any owners, managers, or employees of any SNAP-authorized stores used as comparison stores.

53. Upon information and belief, at no time did ARO Conneen conduct an analysis of eligible food items carried by or prices charged by any SNAP-authorized stores used as comparison stores.

7

54. Upon information and belief, prior to the issuance of the FAD, ARO Conneen spoke with Program Specialist Dotson and/or Section Chief Pesini regarding their investigation and conclusions/determinations.

55. Upon information and belief, prior to issuance of the FAD, ARO Conneen forwarded a copy of Kostner Food Basket's response in support of its request for administrative review to Program Specialist Dotson and/or Section Chief Pesini for further review.

56. FNS's FAD was not based on an undercover investigation.

57. The FAD was primarily based upon FNS's review of EBT transactions at Kostner Food Basket.

58. The FAD was not based upon any declarations or affidavits from any USDA, FNS, or contractor which affirmed that any owner, member, officer, director, or employee of Kostner Food Basket provided cash, alcohol, drugs, or any other ineligible items in exchange for SNAP benefits.

59. FNS's determination in the FAD that Kostner Food Basket engaged in trafficking in violation of its SNAP regulations was premised upon arbitrary and capricious categories.

60. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "repeated dollar values."

61. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "multiple transactions."

62. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "within a set time period."

63. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm."

64. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "EBT transactions that are large."

65. Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations nor any other issuance by FNS defines or describes what constitutes "observed store characteristics" or "recorded food stock."

66. FNS and its investigator failed to obtain a comprehensive record of Kostner Food Basket's food stock.

67. Any evidence in FNS's possession regarding "recorded food stock" was based exclusively on photographs taken by FNS's investigator during a store visit conducted on a single day during the Review Period.

68. The photographs taken by FNS's investigator during the store visit portrayed an incomplete snapshot of the food stock purchased by Kostner Food Basket during the Review Period.

69. Unlike cases involving undercover USDA or FNS investigators, none of the "evidence" compiled by FNS prior to or during administrative proceedings against Kostner Food Basket is direct evidence of trafficking. Instead, all the evidence relied upon by FNS was, at most, circumstantial.

70. The FAD is FNS's final administrative determination that its permanent disqualification of Kostner Food Basket from participation as an authorized SNAP retailer was properly imposed.

71. The FAD did not determine that each of the transactions set forth in the Charge Letter were instances of trafficking in violation of FNS's SNAP regulations.

72. No evidence exists to support that each of the transactions set forth in the Charge Letter was an independent instance of trafficking in violation of FNS's SNAP regulations.

73. FNS does not know what was exchanged for SNAP benefits during any of the transactions set forth in Attachment 1 to the Charge Letter.

74. FNS does not know what was exchanged for SNAP benefits during any of the transactions set forth in Attachment 2 to the Charge Letter.

75. Exclusively eligible food items were exchanged for SNAP benefits during each of the transactions set forth in Attachment 1 to the Charge Letter.

76. Exclusively eligible food items were exchanged for SNAP benefits during each of the transactions set forth in Attachment 2 to the Charge Letter.

77. The FAD concluded that patterns indicative of trafficking took place at Kostner Food Basket.

78. FNS, by failing to produce records and other information which would permit Kostner Food Basket to contact its customers in order to defend against the trafficking charge, acted in an arbitrary and capricious manner designed to deprive Plaintiff Kostner Food Basket of the ability to properly respond to the Charge Letter and during Administrative Review proceedings.

79. All information reviewed and relied upon by FNS during administrative proceedings will be produced as the Administrative Record and/or during discovery during this judicial review proceeding.

80. FNS's ALERT system was the primary basis for the issuance of the Charge Letter.

81. Without ALERT system flags, the Charge Letter would not have been issued.

82. FNS's ALERT system was the primary basis for its conclusion that Kostner Food Basket engaged in trafficking in violation of FNS's SNAP regulations.

83. FNS's ALERT system was the primary basis for its decision in the FAD to affirm the permanent disqualification of Kostner Food Basket from participation in the SNAP as an authorized vendor.

84. FNS placed improper reliance upon its ALERT system in determining that Kostner Food Basket engaged in trafficking in violation of the agency's SNAP regulations.

85. FNS did not have express authority to disqualify SNAP retailers based on the ALERT system.

86. FNS did not have implied authority to disqualify SNAP retailers based on the ALERT system.

87. No statutory provision in the Food and Nutrition Act of 2008 references the ALERT system.

88. Congress did not delegate authority to the USDA Secretary to disqualify SNAP retailers (including Kostner Food Basket) based on the ALERT system.

89. USDA Secretary Vilsack did not delegate authority to FNS to disqualify SNAP retailers (including Kostner Food Basket) based on the ALERT system.

90. FNS's ALERT system does not take into account retailer-specific circumstances, including the volume of a retail food store's purchases.

91. FNS, in the FAD, ignored well-founded explanations that Kostner Food Basket did not engage in trafficking.

92. A higher-than-expected volume of a retail food store's purchases may account for EBT redemption at levels higher than anticipated by FNS.

93. FNS's ALERT system does not take into account the agency's regulations and guidance which require, *inter alia*, retailers to redeem any or all of a SNAP beneficiaries' benefits without regard to the type of eligible food items purchased.

94. FNS's ALERT system does not take into account that SNAP beneficiaries are permitted to redeem EBT for any eligible food items, including the entirety of their monthly allotment or to make large purchases.

95. FNS's ALERT system does not take into account that SNAP-authorized retailers are not permitted to refuse to redeem EBT for eligible food items for any reason, including permitting persons who are not named or pictured on an EBT card to redeem SNAP benefits.

96. SNAP-authorized retailers are not permitted to refuse to process SNAP transactions from the same or different households even if SNAP beneficiaries seek to purchase eligible food items multiple times each day.

97. SNAP-authorized retailers are not permitted to ask EBT cardholders for identification.

98. Kostner Food Basket was not afforded the opportunity to evaluate and respond to all of the evidence in FNS's possession when it issued the Charge Letter.

99. Kostner Food Basket was not afforded the opportunity to evaluate and respond to all of the evidence used by FNS when it made its initial determination.

100. Kostner Food Basket was not afforded the opportunity to evaluate and respond to all of the evidence used by FNS during ARB proceedings.

101. Kostner Food Basket was not afforded the opportunity to evaluate and respond to all of the evidence reviewed and/or relied upon by FNS in making its FAD.

102. Requiring retailers to await judicial review proceedings before they are permitted to review all of the evidence in FNS's possession (which information was relied upon by an

Administrative Review Officer and other FNS officials during administrative proceedings), is arbitrary and capricious.

103. FNS's SNAP retailer administrative process is Kafkaesque and more like a Star Chamber than an equitable federal administrative process.

104. FNS is the sole agency within USDA that does not hold evidentiary hearings during administrative proceedings that concern the revocation of a license or permit before an administrative law judge who is an attorney.

105. FNS is the sole agency within USDA that does not permit discovery during administrative proceedings that concern the revocation of a license or permit before an administrative law judge who is an attorney.

106. Federal administrative proceedings that concern the revocation of a license or permit issued by a federal agency must satisfy due process and other constitutional requirements.

107. FNS is not a law enforcement agency.

108. FNS investigators are not authorized by federal law or regulations to carry firearms or other weapons when conducting investigations of SNAP-authorized retailers.

109. No statute or regulation prohibits FNS from providing Kostner Food Basket or its counsel with the entire administrative record during administrative review proceedings.

110. No statute or regulation prohibits FNS from convening evidentiary hearings during SNAP retailer administrative review proceedings.

111. By failing to provide Kostner Food Basket with all information available to it, FNS did not provide Kostner Food Basket with a meaningful opportunity to respond to the allegations in the Charge Letter in a manner consistent with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

112. By failing to provide Kostner Food Basket with all information available to it, FNS did not provide Kostner Food Basket with a meaningful opportunity to participate during administrative review proceedings in a manner consistent with the Due Process Clause of the Fourth Amendment of the U.S. Constitution.

113. FNS's actions in disqualifying Kostner Food Basket from SNAP has a disparate impact on SNAP retailers owned by immigrants from the Middle East.

114. Kostner Food Basket's owner is an immigrant from the Middle East.

115. Most of the SNAP retailers disqualified by FNS since 2018 are owned by immigrants and many are from the Middle East.

### COUNT I - *DE NOVO* REVIEW OF FNS's FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R § 279

116. Plaintiff repeats and re-alleges paragraphs 1 through 115 as if fully set forth herein.

117. At no time did Kostner Food Basket engage in trafficking in SNAP benefits.

118. At no time did any employee of Kostner Food Basket engage in trafficking in SNAP benefits.

119. At no time did any manager of Kostner Food Basket engage in trafficking in SNAP benefits.

120. At no time did any other person or entity affiliated with Kostner Food Basket engage in trafficking in SNAP benefits.

121. The transactions identified in the attachments to the Charge Letter are not patterns of SNAP transactions indicative of trafficking.

122. The transactions identified in the attachments to the Charge Letter are not "questionable transactions."

123. The transactions identified in the attachments to the Charge Letter did not have "characteristics that are consistent with trafficking violations in SNAP benefits."

124. The purported existence of more than one pattern of allegedly irregular transactions does not make a case of trafficking "more convincing."

125. FNS's permanent disqualification of Kostner Food Basket from participation in SNAP was invalid, unreasonable, arbitrary and capricious, unsupported by the evidence, and should be reversed.

126. A preponderance of the evidence before ARB during administrative review proceedings established that Kostner Food Basket never engaged in trafficking in SNAP benefits.

127. In the FAD, FNS incorrectly determined that a preponderance of the evidence demonstrated that Kostner Food Basket engaged in trafficking, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

128. The permanent disqualification of Kostner Food Basket from participating in SNAP should be reversed because FNS failed to consider all evidence related to the store and the trafficking charges.

129. The permanent disqualification of Kostner Food Basket from participating in SNAP should be reversed because FNS failed to interview a single SNAP beneficiary whose EBT card was used at the store.

130. The FAD should be reversed because permanently disqualifying Kostner Food Basket from participating in SNAP is unreasonable and excessive considering the circumstances.

131. FNS's acts and omissions during administrative proceedings were unreasonable, inequitable, arbitrary and capricious, and in excess of the authority granted to it by Congress.

132. FNS's acts and omissions during administrative proceedings violated and were not consistent with the requirements of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

133. Permanent disqualification of Kostner Food Basket from participating in SNAP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

134. Permanent disqualification of Kostner Food Basket from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to FNS to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

135. FNS's permanent disqualification of Kostner Food Basket from participating in SNAP based upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

136. FNS's permanent disqualification of Kostner Food Basket from participating in SNAP based on the Charge Letter is inconsistent with a disqualification for a "reasonable period of time."

137. FNS's failure to consider or impose a penalty other than permanent disqualification of Kostner Food Basket from participating in SNAP was invalid and erroneous.

138. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

139. In the FAD, FNS acted arbitrarily and capriciously in concluding that Kostner Food Basket engaged in trafficking in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

140. In the FAD, FNS acted arbitrarily and capriciously in denying Kostner Food Basket's CMP request.

141. FNS's permanent disqualification of Kostner Food Basket is premised upon an arbitrary and capricious, erroneous, and unsupportable interpretation of 7 C.F.R. § 278.6.

142. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Kostner Food Basket in its possession and that of state SNAP agencies.

143. Pursuant to 7 U.S.C. § 2023 and 7 C.F.R. Part 279, this Court should conduct a *de novo* review of FNS's FAD which affirmed the permanent disqualification of Kostner Food Basket from participating in SNAP.

WHEREFORE, Plaintiff Kostner Food Basket, Inc. respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a) Reversing the FAD;

(b) Rescinding the Charge Letter and Permanent Disqualification Determination;

(c) Preliminarily and permanently enjoining FNS from disqualifying Kostner Food Basket from participation in SNAP based upon the Permanent Disqualification Determination, the FAD, or the alleged violations in the Charge Letter;

(d) Directing FNS to immediately restore Kostner Food Basket's SNAP authorization and without requiring it to submit additional information or a new application;

(e) Awarding Plaintiff Kostner Food Basket reasonable attorney's fees and costs; and

(f) Such other and further relief as the Court may deem just and proper.

Dated this 4th day of March 2024.

/s/ Lara Austrins
Lara A. Austrins, Esq.
ARDC # 6270537
Olsson Frank Weeda Terman Matz PC
1600 Albion Avenue
Park Ridge, IL 60068-5441
(773) 706-8591 (Direct)
laustrins@ofwlaw.com

Stewart D. Fried, Esq. (*pro hac* forthcoming)
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, D.C. 20006
(202) 518-6326 (Direct)
(202) 747-3140 (Facsimile)
sfried@ofwlaw.com

*Attorneys for Plaintiff Kostner Food Basket, Inc.*